HARRIET L. ROBERTS et al., Appellees, v. GLADYS BISSELL et al., Appellants.

INSANE PERSON: Disclaimer of Interest in Lands—Action to Set Aside—Degree of Proof Necessary. A disclaimer of all interest in lands, the subject of partition proceedings, and the entry of a decree excluding the one filing the disclaimer from all interest in the lands, will not be set aside on the application of a subsequently appointed guardian, except upon very clear and conclusive proof of mental incapacity.

*Appeal from Monroe District Court.*—HON. D. M. ANDERSON, Judge.

MONDAY, MARCH 15, 1915.

·THE opinion states the case.—*Affirmed.*

*D. W. Bates,* for appellants.

*John T. Clarkson,* for appellees.

WEAVER, J.—In the year 1876, Nathaniel Roberts died intestate, seized of about 400 acres of land in Monroe county, Iowa. He left surviving him his widow, Sarah Ann Roberts, who became entitled to one-third of his estate, and several children who each inherited one-tenth of the remaining two-thirds thereof. Thereafter, one of the children died intestate and his one-tenth of two-thirds of said property and estate passed by inheritance to his mother, Sarah Ann Roberts. In the year 1905, the widow being still living, one

1. INSANE PERSON: disclaimer of interest in lands: action to set aside: degree of proof necessary.

of the sons, Tryon Roberts, who is appellant herein, executed
and delivered to his sisters, Mary J. Hinds and Helen Berner,
a conveyance by warranty deed of what was described as
"my undivided one-ninth" of the land of which Nathaniel
Roberts died seized. In March, 1912, the widow died, leaving
a will executed in 1905, by which she devised "the undivided
one-third interest" in said lands, describing them, to her
"bodily heirs," (naming all the children, including Tryon
Roberts) in equal parts, but she failed to devise or dispose
of the interest or title which she had inherited from her
deceased son. After the mother's death, an action in parti-
tion was begun, in which Harriet L. Roberts and others, in-
cluding Tryon Roberts, were named as plaintiffs and Gladys
Bissell and others as defendants. In the petition as origi-
nally filed, it was alleged in substance that while Tryon Rob-
erts had conveyed to his sisters the interest or share inherited
by him from his father, he had become vested as the devisee
and heir of his mother with the title to the two forty-fifths
part of the land of which the father died seized. Later, at
the instance of the appellant's sister, Mary J. Hinds, an
amended petition was filed in which Tryon Roberts was named
as a defendant instead of plaintiff. It alleged in substance
that the conveyance above mentioned as having been made by
Tryon Roberts to his sisters, Mary J. Hinds and Helen Berner,
was intended by the parties thereto as a conveyance not only
of the share or interest in the land which said grantor in-
herited from his father, but also the prospective share or
interest in said lands which he might thereafter inherit from
or acquire through his mother, and that Tryon Roberts was,
therefore, not entitled to any part or share in the partition
of said lands; but the share which he would otherwise have
had belonged in equal parts to his two sisters named as gran-
tees in said deed. In addition to the prayer for partition on
the basis set forth in the petition as amended, it was asked
that the deed from Tryon Roberts be reformed to effectuate
his alleged intent to convey all his actual and prospective

interest in the land. At or about the time of making this amendment to the petition, Mrs. Hinds, without disclosing to Tryon or to any of his immediate family the purpose of her invitation, asked him over the phone to come and see her. He responded to the request and she took him with her to the office of her attorney where an answer to the amended petition prepared by the attorney was signed by him and filed in the partition proceedings. By the terms of the answer, he admits the claim stated in the amendment to the petition, alleges that he sold and intended to convey to his sisters, Mrs. Hinds and Mrs. Berner, all the interest he had then acquired from his father in the lands and all he might thereafter acquire through his mother. He therefore disclaimed all interest in the lands and consented that the relief asked in the amended petition be granted. Thereafter, a decree was entered settling the shares of the various parties in interest on the basis of the allegations of the petition as amended and ordering a sale of the property for the purposes of division and distribution. After the sale and while the proceeds thereof were still in the custody of the court, a guardian was appointed for Tryon Roberts on the application of his son upon the ground that he was mentally incompetent to transact business. The guardian then appeared in the partition proceedings and filed an application setting up the matters and things hereinbefore recited, alleging that at the time Tryon Roberts signed the answer to the amended petition he was mentally disqualified and unable to understand the real nature, force or effect of said pleadings; that as a matter of fact the deed made by him in 1905 was intended to convey and did in fact convey only such interest as he then owned in the property as an heir of his father and that he was induced to sign the answer disclaiming any title or interest as devisee and heir of his mother by reason of misrepresentations made to him by his sister and because of his mental incapacity. Upon this showing, the guardian prays for the vacation of that part of the decree of partition which adjudges Tryon

Roberts to be without title or right to any share in the lands and that he may be adjudged the rightful owner of such share as would otherwise be his as the devisee and heir of his mother. To this application the sister, Mrs. Berner, consents and disclaims any title or interest in herself under the deed of 1905 except to the one-half of the share or interest which Tryon Roberts inherited from his father. The other sister, Mrs. Hinds, insists upon the maintenance of the decree as entered and denies the allegations of the application to modify it.

Upon hearing the testimony, the trial court found the evidence insufficient to justify the re-opening or modification of the decree so far as it relates to the share awarded to Mrs. Hinds, but in view of the disclaimer by Mrs. Berner, the decree was modified by awarding to and confirming in Tryon Roberts the one-half of the interest or share which he acquired in the property as the devisee and heir of his mother. From that part of the decree which denies to Tryon Roberts the relief asked against Mrs. Hinds, the guardian has appealed.

A reading of the testimony leads us to the conclusion that while Tryon Roberts is not a man of strong mentality or marked force of character, there is no very persuasive evidence that he was incompetent to understand and appreciate the meaning and effect of his disclaimer of interest in the land and his consent to the entry of the decree which his guardian now seeks to set aside. Had defense been made in proper time to the claim set up by Mrs. Hinds, the court might well have refused, and doubtless would have refused, to give the deed of 1905 any other effect than that of a conveyance of the title and interest acquired by Tryon Roberts as heir of his father; but having confessed the allegations of the amendment and consented to a decree against him and the court having entered such decree, it cannot properly be vacated and partition be ordered on another and different basis except upon very clear and conclusive proof of mental incapacity. The claim asserted against Tryon Roberts is not free from the odor of greed and

selfishness and cunning, but he deliberately waived his right to object thereto while the court was open to his plea and consented that the claim should be established and confirmed, and we think the adjudication so had cannot be disturbed.

The decree appealed from must stand and it is, therefore,—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.